UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 25-cv-565 |
| JARBOE REALTY & INVESTMENT Co., Inc., | ) |
| Defendant. | ) |

COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the United States Army Corps of Engineers ("Corps"), files this Complaint and alleges as follows:

NATURE OF THE ACTION

1.  This is a civil action brought against Jarboe Realty & Investment Co., Inc., ("Defendant") under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607(a) ("CERCLA"), and the Formerly Utilized Sites Remedial Action Program ("FUSRAP"), *see* Energy and Water Development Appropriations Act, 2000, Pub. L. 106-60, § 611, 113 Stat. 483, 502.  The United States seeks the recovery of costs it has incurred in responding to the releases or threatened releases of hazardous substances at distinct portions of the North St. Louis County Superfund Sites located in St. Louis and Hazelwood, Missouri, including the portion which Defendant currently owns ("Site").  The United States also seeks a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), holding Defendant liable for all future response costs that

1

will be binding in any subsequent action or actions to recover further response costs incurred by the United States at or in connection with the Site.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and over Defendants under 28 U.S.C. §§ 1331 and 1345 and Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607 and 9613(b).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances that gave rise to this claim occurred in this district, and because the Site is located in this district.

## DEFENDANTS

4. Defendant is a corporation incorporated in the State of Missouri with a principal place of business of 9200 Latty Avenue, Hazelwood, MO, 63042.

5. Defendant currently owns the portion of the Site located at 9200 Latty Avenue in Hazelwood, Missouri.

## STATUTORY FRAMEWORK

6. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9601(25); 9604(a).

7. Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), whenever any hazardous substance is released or there is a substantial threat of such a release into the environment, the President is authorized to act, consistent with the National Contingency Plan, to remove or arrange for the removal of, and provide for remedial action relating to any hazardous

substance, or to take any other response measure consistent with the National Contingency Plan which the President deems necessary to protect the public health or welfare or the environment.

8. Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the current owner or operator of a facility, and any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, are liable for all costs of removal or remedial action incurred by the United States not inconsistent with the national contingency plan.

9. In 1974, the Atomic Energy Commission ("AEC") created the FUSRAP program to identify, investigate, and clean up sites where residual radioactive waste remains as a result of the early years of the United States' atomic energy program. The North St. Louis County Superfund Sites were placed in FUSRAP the same year and added to the National Priorities List in 1989. The AEC was abolished in 1975 and FUSRAP was transferred to the Department of Energy ("DOE") as the AEC's successor. In 1998, Congress transferred responsibility for the administration and execution of FUSRAP cleanup from DOE to the Corps pursuant to the Energy and Water Development Appropriations Act, Pub. L. 105-62, 111 Stat. 1320, Sec. 1326. Congress renewed that authority in the 2000 Energy and Water Development Appropriations Act, Pub. L. 106-60, § 611. The responsibilities of EPA and the Corps with respect to the North St. Louis County Superfund Sites are governed by a Federal Facility Agreement, *In re U.S. Dep't of Energy FUSRAP Sites, St. Louis & Hazelwood, Mo.*, Dkt. No. VII-90-F-0005, entered into pursuant to CERCLA Section 120, 42 U.S.C. § 9620.

## THE SITE

10. The Site consists of the 9200 Latty Avenue property (sometimes referred to as the Futura Coatings Property, or "Futura") and the 9170 Latty Avenue property (sometimes referred to as the Hazelwood Interim Storage Site, or "HISS," and, with Futura, the "Latty Avenue

3

Properties"), several adjacent properties (known as the "Latty Vicinity Properties") [1], and several additional nearby properties (the "Downgradient Properties").[2] The Latty Avenue Properties comprise approximately 11 acres in a predominantly commercial/industrial area and are the location of a former uranium production residue storage and drying facility that operated there from approximately 1966 through July 1973.

11.	The Site is part of the larger North St. Louis County Superfund Sites, a geographically extensive FUSRAP site that includes various locations contaminated with radioactive substances originating from uranium production activities for the Manhattan Project during World War II.  These activities created uranium production residues owned by the federal government that, as of the mid-1960s, it sought to transfer to private interests to encourage the growth of the private nuclear energy industry.

12.	In 1966, a private company purchased these uranium production residues and transported them to the Latty Avenue Properties.  Contamination within the Site itself originates from private entities storing, processing, and shipping these residues at the Latty Avenue Properties from approximately 1966 until at least July 1973.  Processing largely occurred on the 9200 Latty Avenue property, and the 9170 Latty Avenue property was used to store hazardous substances.

13.	In 1977, Enos Dean Jarboe purchased the 9200 Latty Avenue property, and shortly thereafter deeded the property to Defendant.

14.	1980, Enos Dean Jarboe purchased the 9170 Latty Avenue property and shortly thereafter deeded the property to Defendant.

---

[1] The Corps has designated as Latty Vicinity Properties the properties known as 10K530076, VP-01(L), VP-02(L), VP-03(L), VP-04(L), VP-05(L), VP-06(L), and VP-40A East.
[2] The Downgradient Properties include VP-03(C), VP-06(C), VP-07(C), and VP-08(C).

15. In 1994, DOE issued a Remedial Investigation ("RI") Report summarizing the results of previous investigations conducted at the North St. Louis County Superfund Sites, including the Site, which concluded that radionuclide contamination was present in the surface and subsurface soils at the North St. Louis County Superfund Sites and identified additional areas for further investigation. DOE and the Corps then continued to investigate and conduct necessary response actions.

16. In May 2003, the Corps issued its Remedial Investigation/Feasibility Study ("RI/FS") for the North St. Louis County Superfund Sites. The RI/FS found significant radionuclide contamination at the Site, including with Thorium-230 (Th-230), Radium-226 (Ra-226), and Uranium-238 (U-238). The RI/FS estimated that there were approximately 138,000 cubic yards of contaminated surface and subsurface soils at the Site.

17. In September 2005, the Corps issued its Record of Decision (ROD) for the North St. Louis County Superfund Sites. The ROD selected Alternative 5, which called for the excavation of contaminated soils to levels that allow for unlimited use and unrestricted exposure, except for some limited areas where soils are inaccessible because they are located under permanent structures such as active roads, railways, or buildings where excavation is considered impracticable under current conditions. In the areas deemed inaccessible, potential risk is managed by implementation of appropriate use restrictions through institutional controls.

18. The Corps has largely completed the selected remedy with respect to the Latty Avenue Properties and Latty Vicinity Properties. Potentially significant additional response actions remain to be undertaken at the Downgradient Properties, including site characterization and sampling.

19. The Corps has documented at least $88,095,734 in unreimbursed response costs in connection with response actions at the Site between October 1997 and May 2020.

20. The Corps has incurred and will incur additional response costs at the Site, including for site characterization, sampling, access/institutional control implementation, and other potential response actions at the Downgradient Properties as well as potential additional response actions at the remainder of the Site.

## GENERAL ALLEGATIONS

21. Hazardous substances, including radioactive substances, were released at and from the Site, including the 9200 and 9170 Latty Avenue Properties, as a result of uranium storage, drying, and transport activities there.

22. From approximately 1966 through at least July 1973, various entities conducted uranium residue storage, transportation, and disposal activities at the Site. As a result of these activities, hazardous substances, including radioactive substances, contained within the residues were released to soils at the Site, including at the 9200 and 9170 Latty Avenue Properties.

23. From approximately May 1966 through approximately 2013, when the Corps completed its excavation, removal, and replacement of contaminated accessible soils at the 9200 and 9170 Latty Avenue Properties, at various times flooding caused by excessive rain flowed across these properties to the Downgradient Properties. During these flooding events, hazardous substances, including radioactive substances, at the 9200 and 9170 Latty Avenue Properties were released, via water-borne transport, at and from those properties to the Downgradient Properties.

24. In approximately 2021, to prepare for potential sale, Defendant adjusted the property lines between the 9200 and 9170 Latty Avenue Properties by enlarging the 9200 Latty Avenue property so that all remaining contaminated inaccessible soils were consolidated on it.

25. Defendant is the current owner of the 9200 Latty Avenue property.

6

## CLAIM FOR RELIEF

### COUNT I – RESPONSE COSTS

26. Paragraphs 1 - 25 above, are realleged and incorporated herein by reference.

27. The Site, and each of its component properties, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

28. Defendant is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

29. There have been releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases, of hazardous substances, within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at and from Site, including from the 9200 Latty Avenue property.

30. The United States has incurred costs of response, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), related to the releases or threatened releases of hazardous substances at and from the Site, including the 9200 Latty Avenue property.

31. The United States' response actions at the Site are not inconsistent with the National Contingency Plan.

32. Defendant is liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), as current owner of a facility from which there has been a release of hazardous substances at or from the facility.

33. Pursuant to Section 107(a)(1) of CERCLA, Defendant is jointly and severally liable to the United States for response costs incurred in connection with the Site.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States respectfully requests that this Court:

   a. Find Defendant jointly and severally liable and order Defendant to reimburse the United States for all costs of the response actions incurred at or in connection with the Site, including interest, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

   b. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), enter a declaratory judgment on Defendant's joint and several liability that will be binding on any subsequent action or actions to recover further response costs or damages; and

   c. Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

Date: 4/23/2025

*/s/ John Broderick*
Eric D. Albert, Assistant Section Chief
John R. Broderick, Senior Attorney
Environmental Enforcement Section
Environmental and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 514-2800 (direct)

Of Counsel:

Christopher D. Carey
Assistant Counsel for Environmental Law
Office of the Chief Counsel
U.S. Army Corps of Engineers

8