UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00565-SRC |
| | ) | |
| JARBOE REALTY & INVESTMENT CO., INC. | ) | |
| | ) | |
| Defendant. | ) | |

**Consent Decree**

TABLE OF CONTENTS


I. BACKGROUND....1
II. JURISDICTION....2
III. PARTIES BOUND....2
IV. DEFINITIONS....3
V. STATEMENT OF PURPOSE....5
VI. PAYMENT OF FUSRAP RESPONSE COSTS....5
VII. PROPERTY REQUIREMENTS....6
VIII. STIPULATED PENALTIES....10
IX. DISPUTE RESOLUTION....11
X. COVENANTS BY PLAINTIFF....12
XI. RESERVATION OF RIGHTS BY UNITED STATES....12
XII. COVENANTS BY SETTLING DEFENDANT AND GUARANTORS....14
XIII. EFFECT OF SETTLEMENT/CONTRIBUTION....14
XIV. RETENTION OF RECORDS....15
XV. NOTICES AND SUBMISSIONS....17
XVI. RETENTION OF JURISDICTION....18
XVII. INTEGRATION AND APPENDICES....18
XVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT....18
XIX. SIGNATORIES/SERVICE....18
XX. FINAL JUDGMENT....19

## I. BACKGROUND

A. This Consent Decree concerns the North St. Louis County Sites ("Site"), located in St. Louis, Missouri.

B. There have been releases or threats of releases of hazardous substances, as defined by Section 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), at or from the Site.

C. In response to the release or threatened release of hazardous substances, the United States Army Corps of Engineers ("USACE") has, under Section 104 of CERCLA pursuant to the Formerly Utilized Sites Remedial Action Program ("FUSRAP"), performed response actions and has incurred response costs at the Site.

D. The USACE has incurred a total of $88,095,734 in response costs at the portions of the Site known as the Futura Property, the HISS Property, and the Latty Avenue VPs known as 10K530076, VP-01(L), VP-02(L), VP-03(L), VP-04(L), VP-05(L), VP-06(L), and VP-40A East.

E. The United States of America ("United States") filed, on behalf of USACE, a complaint in this matter under Section 107 of CERCLA, seeking reimbursement of response costs incurred or to be incurred for response actions taken at or in connection with the release or threatened release of hazardous substances at the Site.

F. The United States alleges that:

1. The Site is a "facility" as defined by Section 101(9) of CERCLA;

2. Jarboe Realty & Investment Co., Inc. (hereinafter, "Settling Defendant") is current owner of a portion of the Site located at 9200 Latty Avenue, Hazelwood, MO 63042;

3. The parties omitted a paragraph 3.

4. Settling Defendant is a responsible party under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is jointly and severally liable for response costs incurred and to be incurred at the Site.

G. Settling Defendant is current owner of the property located at 9200 Latty Avenue, Hazelwood, MO 63042.

H. Settling Defendant does not admit any liability to Plaintiff arising out of the transactions or occurrences alleged in the complaint.

I. The United States has reviewed the Financial Information and Insurance Information submitted by Settling Defendant to determine whether Settling Defendant is financially able to pay response costs incurred and to be incurred at the Site. Based upon this Financial Information and Insurance Information, the United States has determined that Settling Defendant has limited financial ability to pay for response costs incurred and to be incurred at the Site.

J. Mr. Rodney Jarboe and Mr. Jeffrey Jarboe (the "Guarantors") are owners of, among other companies, Jarboe Realty & Investment Co., Inc. and both Rodney and Jeffrey Jarboe agree to guarantee all payment obligations of Settling Defendant in this Consent Decree.

K. The Parties acknowledge and agree that the response actions taken by the USACE have not removed all hazardous substances present on the Settling Defendant's property and that residual contamination remains underneath several existing structures.

L. The United States and Settling Defendant agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter without further litigation and without any further admission or adjudication of any issue of fact or law is appropriate and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED:

## II. JURISDICTION

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and Sections 107 and 113(b) of CERCLA and personal jurisdiction over Settling Defendant. Venue lies in this District under Section 113(b) of CERCLA and 28 U.S.C. §§ 1391(b), and 1395(a), because the Site is located in this judicial district. This Court retains jurisdiction over the subject matter of this action and over the Parties for the purpose of resolving disputes arising under this Decree, entering orders modifying this Decree, or effectuating or enforcing compliance with this Decree. The Settling Defendant may not challenge the terms of this Decree or this Court's jurisdiction to enter and enforce this Decree.

## III. PARTIES BOUND

2. This Consent Decree is binding upon the United States, upon the Settling Defendant and upon its successors and assigns, and the payment provisions in Paragraphs 6 and 15.a of the Consent Decree are binding upon the Guarantors and upon their successors, heirs, and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets, or any Transfer of the Site or any portion thereof, shall in no way alter the status or responsibilities of the Settling Defendant under this Consent Decree.

3. In any action to enforce this Decree, Settling Defendant may not raise as a defense the failure of any officer, director, employee, agent, contractor, subcontractor, or any person representing such Settling Defendant to take any action necessary to comply with this Decree. Settling Defendant shall provide notice of this Decree to each person representing such Settling Defendant with respect to the Site.

## IV. DEFINITIONS

4. Terms not otherwise defined in this Decree shall have the meanings assigned in CERCLA or in regulations promulgated under CERCLA. Whenever the terms set forth below are used in this Decree, the following definitions apply:

"CERCLA" means the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675.

"Day" or "day" means a calendar day. In computing any period under this Decree, the day of the event that triggers the period is not counted and, where the last day is not a working day, the period runs until the close of business of the next working day. "Working day" means any day other than a Saturday, Sunday, or federal or State holiday.

"Decree" means this Consent Decree and all appendices attached hereto (listed in Section XVII). If there is a conflict between a provision in Sections II through XX and a provision in any appendix, the provision in Sections II through XX controls.

"DOE" means the United States Department of Energy and all of its past and present components or elements, and any successor departments, agencies, or instrumentalities, including with respect to the FUSRAP Program.

"DOJ" means the United States Department of Justice.

"Effective Date" means the date upon which the Court's approval of this Decree is recorded on its docket.

"EPA" means the United States Environmental Protection Agency.

"Financial Information" shall mean those financial documents identified in Appendix B.

"Fund" means the Hazardous Substance Superfund established under Section 9507 of the Internal Revenue Code, 26 I.R.C. § 9507.

"FUSRAP" means the Formerly Utilized Sites Remedial Action Program administered by the United States Department of Energy and the United States Army Corps of Engineers.

"FUSRAP Waste Material" means soil, sediment, surface water, ground water, and structures contaminated as a result of Manhattan Engineer District/Atomic Energy Commission (MED/AEC) uranium ore or residue processing activities by any person or as a result of any subsequent movement of any residues or wastes from such activities to or at the Site or migration of any such contamination to, from, or at the Site, including 1) all wastes, including but not limited to radiologically contaminated wastes, resulting from or associated with uranium manufacturing or processing activities conducted at the St. Louis Downtown Site; and 2) other chemical or non-radiological wastes which have been mixed or commingled with radiologically contaminated wastes resulting from or associated with uranium manufacturing or processing activities conducted at the St. Louis Downtown Site.

"FUSRAP Response Costs" means all costs (including direct, indirect, payroll, contractor, and laboratory costs) that the United States on behalf of the USACE or DOE paid prior to the Effective Date or pays after the Effective Date pursuant to FUSRAP in conducting response actions with respect to FUSRAP Waste Material at or in connection with the Site. FUSRAP Response Costs also include any enforcement costs that the DOJ incurred prior to the Effective Date in efforts to recover such costs incurred by the USACE or DOE in connection with the Site from any person. For purposes of this definition, any action taken with respect to FUSRAP Waste Material pursuant to or in connection with the 1990 Federal Facility Agreement between EPA and DOE (EPA Docket No. VII-90-F-0005) or any amendment thereof is a response action taken pursuant to FUSRAP.

"Guarantors" shall mean Mr. Rodney Jarboe and/or Mr. Jeffrey Jarboe.

"Including" or "including" means "including but not limited to."

"Institutional Controls" means Proprietary Controls (i.e., easements or covenants running with the land that (i) limit land, water, or other resource use, provide access rights, or both and (ii) are created under common law or statutory law by an instrument that is recorded, or for which notice is recorded, in the appropriate land records office) and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to FUSRAP Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure noninterference with, or ensure the protectiveness of the Remedial Action; (c) provide information intended to modify or guide human behavior at or in connection with the Site; or (d) any combination thereof.

"Interest" means interest at the rate specified for interest on investments of the Hazardous Substances Fund established under Section 9507 of the Internal Revenue Code, 26 I.R.C. § 9507, as provided under section 107(a) of CERCLA, compounded annually on October 1 of each year. The applicable rate of interest will be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. As of the date of lodging of this Decree, rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"Insurance Information" shall mean those insurance documents identified in Appendix C.

"Jarboe Property" shall mean 9200 Latty Avenue, Hazelwood, MO 63042.

"Paragraph" or "¶" means a portion of this Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" means the United States and Settling Defendant.

"Plaintiff" shall mean the United States.

"RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901–6992k (also known as the Resource Conservation and Recovery Act).

"Record of Decision" means the USACE decision document that memorializes the selection of the remedial action relating to the Site signed on September 2, 2005, by the Commander, Mississippi Valley Division, USACE, and the Regional Administrator, EPA Region 7, and all attachments thereto, as well as all subsequent amendments and explanations of significant differences.

"Remedial Action" means the remedial action selected in the Record of Decision, and any amendments thereto or explanations of significant differences.

"Section" means a portion of this Decree identified by a Roman numeral.

"Settling Defendant" means Jarboe Realty & Investment Co., Inc.

"Site" means the North St. Louis County Sites, comprised of the St. Louis Airport Site ("SLAPS")/Hazelwood Interim Storage Site ("HISS")/Futura Coating Company Site (CERCLIS ID# MOD980633176, the Latty Avenue Vicinity Properties ("Latty VPs"), and the SLAPS Vicinity Properties ("SLAPS VPs"), and all Operable Units defined and set forth in the December 3, 2021 Non-significant Change to the Record of Decision for the North St. Louis County Sites, located in St. Louis County, MO, and depicted generally on the map attached as Appendix A.

"State" means the State of Missouri.

"Transfer" means to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"United States" means the United States of America and each department, agency, and instrumentality of the United States, including USACE.

"USACE" means the United States Army Corps of Engineers and any successor departments, agencies, or instrumentalities, including with respect to the FUSRAP Program.

## V. STATEMENT OF PURPOSE

5. By entering into this Consent Decree, the mutual objective of the Parties is for Settling Defendant to make a cash payment and to implement Institutional Controls to resolve its alleged civil liability for the Site under Section 107 of CERCLA, 42 U.S.C. § 9607, as provided in the Covenants by Plaintiff in Section X, and subject to the Reservations of Rights by United States in Section XI.

## VI. PAYMENT OF FUSRAP RESPONSE COSTS

6. **Payment of FUSRAP Response Costs**. Settling Defendant shall pay to USACE the principal amount of $769,722.00 as set forth herein, in payment for FUSRAP Response Costs. Settling Defendant shall make the payment within 30 days after the Effective Date and, if timely paid, no Interest will accrue on this amount. The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Eastern District of Missouri shall provide to Settling Defendant, in accordance with ¶ 46, instructions for making this payment, including a Consolidated Debt Collection System ("CDCS") reference number. Settling Defendant shall

make such payment at https://www.pay.gov in accordance with the FLU's instructions, including references to the CDCS Number. Settling Defendant shall send notices of this payment in accordance with Section XV (Notices and Submissions), including references to the CDCS Number and DJ Number 90-11-2-08259/3.

7. **Deposit of Payments**. All amounts paid pursuant to ⁋ 6 shall be forwarded to USACE and will be credited to the account used to fund response actions at FUSRAP sites, and will be available for response action costs for any FUSRAP site. The point of contact for payment at USACE shall be: Mr. Kevin Heath, kevin.j.heath@usace.army.mil, (901) 873-9135.

8. **Guaranty**. The Guarantors hereby guarantee payment of all payment and/or penalty obligations in ⁋ 6 (Payment of FUSRAP Response Costs) and ⁋ 15.a of Section VIII (Stipulated Penalties) on behalf of Settling Defendant. This is a continuing Guaranty as to which each Guarantor is jointly and severally liable and shall remain in full force and effect until all payments under such paragraphs have been fully paid. Guarantors, by their signatures below, each agree to jurisdiction of this Court for the purposes of enforcing the Guaranty pursuant to this Consent Decree. In the event Settling Defendant defaults on any payment and/or penalty obligations under ⁋ 6 (Payment of FUSRAP Response Costs) or ⁋ 15.a of Section VIII (Stipulated Penalties), the United States shall be entitled to immediately pursue its rights to enforce this Guaranty in any appropriate legal forum and Guarantors and Settling Defendant agree not to challenge the United States' enforcement of this Guaranty.

## VII. PROPERTY REQUIREMENTS

9. As used in this Section, "Affected Property" means any portion of the Jarboe Property where USACE determines, at any time, that access; land, water, or other resource use restrictions; Institutional Controls; or any combination thereof, are needed to implement the Remedial Action.

10. **Access and Noninterference by Settling Defendant**. Settling Defendant shall:

a. provide Plaintiff, and its representatives, contractors, and subcontractors with access at all reasonable times to the Affected Property to conduct any activity regarding the Remedial Action or the Decree; and

b. refrain from using the Affected Property in any manner that USACE determines will pose an unacceptable risk to human health or to the environment because of exposure to FUSRAP Waste Material, or will interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

11. If USACE determines in a decision document prepared in accordance with the NCP that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are appropriate, Settling Defendant shall cooperate with USACE's efforts to secure and ensure compliance with such Institutional Controls.

12. **Notice to Successors-in-Title.**

a. Settling Defendant shall, within 15 days after the Effective Date, submit for USACE approval a notice to be recorded regarding its property at the Site in the appropriate land records. The notice must: (1) include a proper legal description of the property; (2) provide notice to all successors-in-title: (i) that the property is part of, or affected by, the Site; (ii) that the USACE has selected a remedy for the Site; and (iii) that potentially responsible parties have entered into a Decree requiring implementation of such remedy; and (3) identify the U.S. District Court in which the Decree was filed, the name and civil action number of this case, and the Effective Date of the Decree. Settling Defendant shall record the notice within 10 days after USACE's approval of the notice and submit to USACE, within 10 days thereafter, a certified copy of the recorded notice.

b. Settling Defendant shall, prior to entering into a contract to Transfer any of its property that is part of the Site, or 60 days prior to a Transfer of such property, whichever is earlier:

(1) notify the proposed transferee that USACE has selected a remedy regarding the Site, that potentially responsible parties have entered into a Consent Decree requiring implementation of such remedy, and that the United States District Court has entered the Decree (identifying the name and civil action number of this case and the date the Court entered the Decree); and

(2) notify USACE of the name and address of the proposed transferee and provide USACE with a copy of the notice that it provided to the proposed transferee.

13. **Proprietary Controls**. Settling Defendant, as owner of the Affected Property shall, with respect to its Affected Property, execute or cause to be executed in accordance with the procedures of this paragraph, Proprietary Controls that: (i) grant a right of access to conduct any activity regarding the Remedial Action or the Decree; and (ii) grant the right to enforce the land, water, or other resource use restrictions set forth in ⁋ 13(d). Settling Defendant consents to the recordation of such Proprietary Controls by USACE upon their execution.

a. **Grantees**. The Proprietary Controls must be granted to one or more of the following persons and their representatives, as determined by USACE: the United States, the State, Settling Defendant, and other appropriate grantees. Proprietary Controls in the nature of a Uniform Environmental Covenants Act ("UECA") document granted to persons other than the United States must include a designation that USACE (and/or the State of Missouri as appropriate) is either a "department" or a party expressly granted the right of access and the right to enforce the covenants allowing the United States (and/or the State of Missouri) to maintain the right to enforce the Proprietary Controls without acquiring an interest in real property.

b. **Initial Title Evidence**. Settling Defendant shall, within 30 days after the Effective Date:

(1) **Record Title Evidence**. Submit to USACE a title insurance commitment or other title evidence acceptable to USACE that: (i) names the proposed insured or the party in whose favor the title evidence runs, or the party who will hold the real estate interest, or if that party is uncertain, names the United States, the State of Missouri, the Settling Defendant, or "To Be Determined;" (ii) covers the Affected Property that is to be encumbered; (iii) demonstrates that the person or entity that will execute the Proprietary Controls is the owner of such Affected Property; (iv) identifies all record matters that affect title to the Affected Property, including all prior liens, claims, rights (such as easements), mortgages, and other encumbrances (collectively, "Prior Encumbrances"); and (v) includes complete, legible copies of such Prior Encumbrances; and

(2) **Non-Record Title Evidence**. Submit to USACE a report of the results of an investigation, including a physical inspection of the Affected Property, which identifies non-record matters that could affect the title, such as unrecorded leases or encroachments.

c. **Release or Subordination of Prior Liens, Claims, and Encumbrances.** If any Prior Encumbrance may defeat or adversely affect the rights to be granted by the Proprietary Controls in a manner that could interfere with the Remedial Action or result in unacceptable exposure to FUSRAP Waste Material, Settling Defendant shall consult with USACE regarding the release, subordination, modification, or relocation of such Prior Encumbrance.

d. **Update to Title Evidence and Recording of Proprietary Controls**

(1) USACE shall provide proposed Proprietary Controls for the Jarboe Property to Settling Defendant. Not more than thirty days after receipt, Settling Defendant shall either notify USACE that it agrees with the proposed Proprietary Controls or submit proposed revisions for USACE approval. USACE may accept, reject, or, after consultation with Settling Defendant, accept mutually agreeable modifications to the proposed revisions (or, if agreement cannot be reached, reject the proposed revisions). A decision by USACE to reject Settling Defendant's proposed revisions to proposed Proprietary Controls shall be subject to Dispute Resolution in accordance with Section IX.

(2) Settling Defendant shall, within 15 days of its acceptance of the proposed Proprietary Controls or of USACE's decision with respect to any proposed revisions to the proposed Proprietary Controls, update the original title insurance commitment (or other evidence of title acceptable to USACE) under ¶ 13.b (Initial Title Evidence). If the updated title examination indicates that no liens,

claims, rights, or encumbrances have been recorded since the effective date of the original commitment (or other title evidence), Settling Defendant shall so notify USACE not later than 5 days after receipt of the updated title examination, so that USACE may secure the immediate recordation of the Proprietary Controls in the appropriate land records. Otherwise, Settling Defendant shall consult with USACE, in accordance with ¶ 13.c (Release or Subordination of Prior Liens, Claims, and Encumbrances) regarding any newly-discovered liens, claims, rights, and encumbrances.

(3) If Settling Defendant submitted a title insurance commitment under ¶ 13.b(1) (Record Title Evidence), then upon the recording of the Proprietary Controls and instruments addressing Prior Encumbrances, if any, Settling Defendant shall obtain a title insurance policy that: (i) is consistent with the original title insurance commitment; (ii) is for $100,000 or other amount approved by USACE; (iii) is issued to the United States, Settling Defendant, or other person approved by USACE; and (iv) is issued on a current American Land Title Association ("ALTA") form or other form approved by USACE.

(4) Settling Defendant shall, within 30 days after USACE has recorded the Proprietary Controls and instruments addressing Prior Encumbrances, if any, or such other deadline approved by USACE, provide to the United States and to all grantees of the Proprietary Controls: (i) certified copies of the recorded Proprietary Controls and instruments addressing Prior Encumbrances, if any, showing the clerk's recording stamps; and (ii) the title insurance policy(ies) or other approved form of updated title evidence dated as of the date of recording of the Proprietary Controls and instruments.

(5) Settling Defendant shall monitor, maintain, and enforce, and, until the issuance of the Site Closeout Report, annually report on all Proprietary Controls required under this Decree.

e. Settling Defendant shall not Transfer their interests in Affected Property unless USACE has executed and recorded all Proprietary Controls and all instruments addressing Prior Encumbrances required by USACE regarding such Affected Property in accordance with this Paragraph.

14. Notwithstanding any provision of the Decree, USACE and the United States retain all of their access authorities and rights, as well as all of their rights to require land, water, or other resource use restrictions and Institutional Controls, including related enforcement authorities, under CERCLA, RCRA, and any other applicable statute or regulations.

## VIII. STIPULATED PENALTIES

15. Settling Defendant is liable to the United States for the following stipulated penalties:

a. For any failure by Settling Defendant to pay any amount due under Section VI (Payment of FUSRAP Response Costs) by the required date, Settling Defendant shall pay to USACE, as a stipulated penalty, $1,000 per noncompliance per day that such payment is late for the 1st through 30th days and $2,500 per day thereafter, in addition to Interest accrued from the date payment was due through the date of payment.

b. For any failure by Settling Defendant to timely or otherwise comply with any requirement of Section VII (Property Requirements), Settling Defendant shall pay to USACE, as a stipulated penalty, $500 per day per noncompliance with each requirement.

16. **Accrual of Stipulated Penalties.** Stipulated Penalties accrue from the date performance was due, or the day noncompliance occurs, whichever is applicable, until the date the requirement is completed or the final day of the correction of the noncompliance. Nothing in this Decree prevents the simultaneous accrual of separate penalties for separate noncompliances with this Decree. Stipulated penalties accrue regardless of whether Settling Defendant has been notified of noncompliance, and regardless of whether Settling Defendant has initiated dispute resolution under Section IX, provided, however, that no penalties will accrue as follows:

a. with respect to a matter that is the subject of dispute resolution under Section IX, during the period, if any, beginning on the 21st day after the later of the date that USACE's Statement of Position is received or the date that Settling Defendant reply thereto (if any) is received until the date of the Formal Decision under ¶ 22.b; or

b. with respect to a matter that is the subject of judicial review by the Court under ¶ 23, during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.

17. **Demand and Payment of Stipulated Penalties.** USACE may send Settling Defendant a demand for stipulated penalties. The demand will include a description of the noncompliance and will specify the amount of the stipulated penalties owed. Settling Defendant may initiate dispute resolution under Section IX within 30 days after receipt of the demand. Settling Defendant shall pay the amount demanded or, if it initiate dispute resolution, the uncontested portion of the amount demanded, within 30 days after receipt of the demand. Settling Defendant shall pay the contested portion of the penalties determined to be owed, if any, within 30 days after the resolution of the dispute. Each payment for: (a) the uncontested penalty demand or uncontested portion, if late; and (b) the contested portion of the penalty demand determined to be owed, if any, must include an additional amount for Interest accrued from the date of receipt of the demand through the date of payment. Settling Defendant shall make payment for Stipulated Penalties at https://www.pay.gov using the link for "United States Army Corps of Engineers Finance Center" including references to the Hazelwood Interim Storage Site (HISS)/Latty Avenue FUSRAP site and DJ #90-11-2-08259/3, and the purpose of the payment.

Settling Defendant shall send a notice of this payment to DOJ and USACE, in accordance with ¶ 46. The payment of stipulated penalties and Interest, if any, does not alter any obligation by Settling Defendant under the Decree.

18. If the United States brings an action to enforce this Decree, Settling Defendant shall reimburse the United States for all costs of such action, including the costs of attorney time. Payments made under this Section are in addition to any other remedies or sanctions available to the United States by virtue of a Settling Defendant's failure to comply with the requirements of this Decree.

19. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued under this Decree.

## IX. DISPUTE RESOLUTION

20. Unless otherwise provided in this Decree, Settling Defendant must use the dispute resolution procedures of this Section to resolve any dispute arising under this Decree. Settling Defendant shall not initiate a dispute challenging the Record of Decision. The United States may enforce any requirement of the Decree that is not the subject of a pending dispute under this Section.

21. A dispute will be considered to have arisen when one or more parties sends a written notice of dispute ("Notice of Dispute") in accordance with ⁋ 46. Disputes arising under this Decree must in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations may not exceed 20 days after the dispute arises, unless the parties to the dispute otherwise agree. If the parties cannot resolve the dispute by informal negotiations, the position advanced by USACE is binding unless Settling Defendant initiates formal dispute resolution under ¶ 22. By agreement of the Parties, mediation may be used during this informal negotiation period to assist the parties in reaching a voluntary resolution or narrowing of the matters in dispute.

22. **Formal Dispute Resolution**

a. **Statements of Position.** Settling Defendant may initiate formal dispute resolution by serving on the Plaintiff, within 20 Days after the conclusion of informal dispute resolution under ¶ 21, an initial Statement of Position regarding the matter in dispute. The Plaintiff's responsive Statement of Position is due within 20 Days after receipt of the initial Statement of Position. All Statements of Position must include supporting factual data, analysis, opinion, and other documentation. A reply, if any, is due within 10 Days after receipt of the response. If appropriate, USACE may extend the deadlines for filing statements of position for up to 45 Days and may allow the submission of supplemental statements of position.

b. **Formal Decision.** The Chief of USACE's Environmental Division will issue a formal decision resolving the dispute ("Formal Decision") based on the statements of position and any replies and supplemental statements of position. The Formal Decision is binding on Settling Defendant unless it timely seeks judicial review under ¶ 23.

c. **Compilation of Administrative Record.** USACE shall compile an administrative record regarding the dispute, which must include all statements of position, replies, supplemental statements of position, and the Formal Decision.

23. **Judicial Review**

a. Settling Defendant may obtain judicial review of the Formal Decision by filing, within 20 Days after receiving it, a motion with the Court and serving the motion on all Parties. The motion must describe the matter in dispute and the relief requested. The parties to the dispute shall brief the matter in accordance with local court rules.

b. **Review on the Administrative Record**. Judicial review of disputes regarding the following issues must be on the administrative record: (i) the adequacy or appropriateness of deliverables required under the Decree; (ii) the adequacy of the performance of the Remedial Action; (iii) whether a reopener condition under ¶¶ 27 or 28 is satisfied, including whether the Remedial Action is not protective of human health and the environment; (iv) any other items requiring USACE approval under the Decree; and (v) any other disputes that the Court determines should be reviewed on the administrative record. For all of these disputes, Settling Defendant bears the burden of demonstrating that the Formal Decision was arbitrary and capricious or otherwise not in accordance with law.

c. Judicial review of any dispute not governed by ¶ 23.b shall be governed by applicable principles of law.

24. The initiation of dispute resolution procedures under this Section does not extend, postpone, or affect in any way any requirement of this Decree, except as USACE agrees, or as determined by the Court. Stipulated penalties with respect to the disputed matter will continue to accrue, but payment is stayed upon the initiation of dispute resolution by Settling Defendant pending resolution of the dispute.

## X. COVENANTS BY PLAINTIFF

25. Except as specifically provided in Section XI (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against Settling Defendant and Guarantors pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), regarding the Site. With respect to present and future liability, these covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Defendant and Guarantors of their obligations under this Consent Decree. These covenants are also conditioned upon the veracity and completeness of the Financial Information and the Insurance Information provided to the United States by Settling Defendant and the financial, insurance, and indemnity certification made by Settling Defendant in ⁋ 45. These covenants extend only to Settling Defendant and Guarantors and do not extend to any other person.

## XI. RESERVATION OF RIGHTS BY UNITED STATES

26. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant and Guarantors with respect to all matters not expressly

included within ⁋ 25 (Covenants by Plaintiff). Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant and Guarantors with respect to:

a. liability for failure of Settling Defendant or Guarantors to meet a requirement of this Consent Decree;

b. criminal liability;

c. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

d. liability based on the ownership or operation of the Site by Settling Defendant or Guarantors when such ownership or operation commences after signature of this Consent Decree by Settling Defendant and Guarantors;

e. liability based on Settling Defendant's or Guarantors' transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of FUSRAP Waste Material at or in connection with the Site, after signature of this Consent Decree by Settling Defendant and Guarantors;

f. liability arising from the past, present, or future disposal, release or threat of release of FUSRAP Waste Material outside of the Site; and

g. liability for costs incurred or to be incurred by the United States that are not within the definition of FUSRAP Response Costs.

27. Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information or the Insurance Information provided by Settling Defendant, or the financial, insurance, or indemnity certification made by Settling Defendant in ⁋ 45, is false or, in any material respect, inaccurate.

28. **United States' Pre- and Post-Closeout Reservations**

a. Notwithstanding any other provision of this Decree, the United States reserves, and this Decree is without prejudice to, the right to institute proceedings in this action or in a new action seeking to compel Settling Defendant to pay the United States for additional FUSRAP Response Costs. The United States may exercise this reservation only if, at any time, conditions at the Site previously unknown to USACE are discovered, or information previously unknown to USACE is received, and USACE determines, based in whole or in part on these previously unknown conditions or information, that the Remedial Action is not protective of human health or the environment. Previously unknown conditions and previously unknown information does not include previously inaccessible areas becoming accessible.

b. Before issuance of the Site Closeout Report, the information and the conditions known to USACE include only that information and those conditions contained in or referenced in records related to the Site in the possession of USACE or DOE as of the date of lodging of this Consent Decree.

c. After issuance of the Site Closeout Report, the information and the conditions known to USACE include only that information and those conditions known to USACE or DOE as of the date of the Site Closeout Report and set forth in the Record of Decision, the administrative record supporting the Record of Decision, the post-Record of Decision administrative record, the Site Closeout Report administrative record, or in any information received by USACE in accordance with the requirements of this Decree prior to the Site Closeout Report.

29. Notwithstanding any provision of the Decree, the United States retains all access authorities and rights, as well as all rights to require land, water, or other resource use restrictions and Institutional Controls, including related enforcement authorities, under CERCLA, RCRA, and any other applicable statute or regulations.

## XII. COVENANTS BY SETTLING DEFENDANT AND GUARANTORS

30. Subject to ¶ 31, Settling Defendant and Guarantors covenant not to sue and shall not assert any claim or cause of action against the United States, or its contractors or employees under CERCLA, Section 7002(a) of RCRA, the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, the Price Anderson Act, 42 U.S.C. § 2210, the State Constitution, State law, or at common law regarding the Site. Subject to ¶ 31, Settling Defendant and Guarantors covenant not to seek reimbursement from the Fund through CERCLA or any other law regarding the Site and FUSRAP Response Costs.

31. **Settling Defendant's and Guarantors' Reservation**. The covenants in ¶ 30 do not apply to any claim or cause of action brought, or order issued, after the Effective Date by the United States to the extent such claim, cause of action, or order is within the scope of a reservation under ¶¶ 26.a through 26.g, and ¶ 20.

32. Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

33. Settling Defendant and Guarantors agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that it may have for response costs relating to the Site against any other person who is a potentially responsible party under CERCLA at the Site. This waiver shall not apply with respect to any defense, claim, or cause of action that the Settling Defendant or Guarantor may have against any person if such person asserts a claim or cause of action relating to the Site against Settling Defendant or such Guarantor.

## XIII. EFFECT OF SETTLEMENT/CONTRIBUTION

34. Except as provided in ⁋ 32 (claims against other PRPs), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section XII (Covenants by Settling Defendant and Guarantors), each of the Parties expressly reserves any and all rights (including, but not limited to, under Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that it may have with respect to any matter, transaction, or

occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)–(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

35. The Parties agree, and by entering this Consent Decree this Court finds, that this settlement constitutes a judicially-approved settlement pursuant to which Settling Defendant and Guarantors have, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this Consent Decree. The "matters addressed" in this Decree are all FUSRAP Response Costs incurred or to be incurred, at or in connection with the Site, by the United States or any other person, except for the State; provided, however, that if the United States exercises rights under the reservations in ¶¶ 26.a through 26.g and ¶ 20, the "matters addressed" in this Decree will no longer include those response costs that are within the scope of the exercised reservation.

36. The Parties further agree, and by entering this Consent Decree this Court finds, that the complaint filed by the United States in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this Consent Decree constitutes a judicially-approved settlement pursuant to which Settling Defendant and Guarantors have, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

37. Settling Defendant and Guarantors shall, with respect to any suit or claim brought by one of them for matters related to this Consent Decree, notify USACE and DOJ in writing no later than 60 Days prior to the initiation of such suit or claim. Settling Defendant and Guarantors also shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify USACE and DOJ in writing within 10 Days after service of the complaint or claim upon it. In addition, Settling Defendant and Guarantors shall notify USACE and DOJ within 10 Days after service or receipt of any Motion for Summary Judgment, and within 10 Days after receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

38. **Res Judicata and Other Defenses.** In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling Defendant and Guarantors shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants by Plaintiff set forth in Section X.

## XIV. RETENTION OF RECORDS

39. Until 10 years after the Site Closeout Report, Settling Defendant shall preserve and retain all non-identical copies of records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter

referred to as "Records") now in its possession or control, or that come into its possession or control, that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that if Settling Defendant is potentially liable as an owner or operator of the Site, Settling Defendant must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

40. After the conclusion of the record retention period, Settling Defendant shall notify USACE and DOJ at least 90 Days prior to the destruction of any such Records, and, upon request by USACE or DOJ, except as provided in ⁋ 41 (Privileged and Protected Claims), Settling Defendant shall deliver any such Records to USACE.

41. **Privileged and Protected Claims**

a. Settling Defendant may assert that all or part of a Record requested by the United States ("Requesting Party") is privileged or protected as provided under federal law, in lieu of providing the Record, provided Settling Defendant complies with ¶ 41.b, and except as provided in ¶ 41.c.

b. If Settling Defendant asserts a claim of privilege or protection, it shall provide the Requesting Party with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the Record's contents; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Settling Defendant shall provide the Record to the Requesting Party in redacted form to mask the privileged or protected portion only. Settling Defendant shall retain all Records that it claims to be privileged or protected until the Requesting Party has had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in Settling Defendant's favor.

c. Settling Defendant may not make a claim of privilege or protection regarding: (i) any data regarding the Site, including all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or (ii) the portion of any Record that Settling Defendant is required to create or generate in accordance with this Decree.

42. **Confidential Business Information (CBI) Claims**. Settling Defendant may claim that all or part of a Record provided to the Requesting Party under this Section is CBI to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 32 C.F.R. 286.10. Settling Defendant shall segregate and clearly identify all Records or parts thereof submitted under this Decree for which the Settling Defendant claims is CBI by labeling each page or each electronic filed "claimed as confidential business information" or "claimed as CBI." Records that Settling Defendant identifies as CBI will be afforded the protection specified in 32 C.F.R. Part 286. If no claim of CBI accompanies Records when they are submitted to USACE, or if USACE has notified the Settling Defendant that the Records are not entitled to confidential treatment under the standards of Section 104(e)(7) of

CERCLA, 42 U.S.C. § 9604(e)(7), or 32 C.F.R. Part 286, the public may be given access to such Records without further notice to Settling Defendant.

43. In any proceeding under this Decree, validated sampling or monitoring data regarding the Site that has been reviewed and approved by USACE, if relevant to the proceeding, is admissible as evidence, without objection.

44. Notwithstanding any provision of this Decree, the United States retain all of information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

45. Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has:

a. not altered, mutilated, discarded, destroyed or otherwise disposed of any Records relating to its potential liability regarding the Site since notification of potential liability by the United States or the State, and that it has fully complied with any and all USACE and State requests for information regarding the Site and Settling Defendant's financial circumstances, including but not limited to insurance and indemnity information, pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), Section 3007 of RCRA, 42 U.S.C. § 6927, and state law;

b. submitted to DOJ financial information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the financial information was submitted to DOJ and the time Settling Defendant executes this Consent Decree; and

c. fully disclosed any information regarding the existence of any insurance policies or indemnity agreements that may cover claims relating to cleanup of the Site, and submitted to USACE upon request such insurance policies, indemnity agreements, and information.

## XV. NOTICES AND SUBMISSIONS

46. All agreements, approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, waivers, and requests specified in this Decree must be in writing unless otherwise specified. Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Except as otherwise provided, notice to a Party by email in accordance with this Section satisfies any notice requirement of the Consent Decree regarding such Party.

| | |
|---|---|
| As to DOJ: | via email to:<br>Eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-11-2-08259/3 |
| As to USACE: | via email to:<br>Ms. Nicki Fatherly [nicki.fatherly@usace.army.mil] |

As to Settling Defendant: Mr. Rod Jarboe
9200 Latty Avenue
Hazelwood, Missouri 63042

## XVI. RETENTION OF JURISDICTION

47. This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVII. INTEGRATION AND APPENDICES

48. This Consent Decree and its appendices constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the map of the Site.

"Appendix B" is a list of the financial documents submitted to DOJ by Settling Defendant.

"Appendix C" is a list of the insurance documents submitted to DOJ by Settling Defendant.

## XVIII. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

49. This Consent Decree shall be lodged with the Court for a period of at least 30 days for public notice and comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations that indicate that this Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

50. If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XIX. SIGNATORIES/SERVICE

51. Each undersigned representative of Settling Defendant, Guarantors, and the United States certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

52. Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendant in writing that it no longer supports entry of the Consent Decree.

53. Settling Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons. The Parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XX. FINAL JUDGMENT

54. Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between the United States, Settling Defendant, and Guarantors. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

So ordered this 8th day of August 2025.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

Signature Page for Consent Decree Regarding North St. Louis County FUSRAP Site

**FOR THE UNITED STATES**:

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

John Broderick
_______________________________
Eric D. Albert, Assistant Section Chief
John Broderick, Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section

Signature Page for Consent Decree Regarding North St. Louis County FUSRAP Site.

**FOR Jarboe Realty & Investment Co., Inc.:**

1/13/2025
Date

Rodney Jarboe
President
Jarboe Realty & Investment Co., Inc.
9200 Latty Avenue
Hazelwood, MO 63042-2805

If the Decree is not approved by the Court within 60 days after the date of lodging, and the United States requests, this Settling Defendant agrees to accept service of the complaint by mail, and to execute a waiver of service of a summons under Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court. This Settling Defendant hereby designates the agent below to accept service of the complaint by mail and to execute the Rule 4 waiver of service. This Settling Defendant understands that it does not need to file an answer to the complaint until it has executed the waiver of service or otherwise has been served with the complaint.

| | |
|---|---|
| Name (print): | Rodney Jarboe |
| Title: | President |
| Company: | Jarboe Realty & Investment Co., Inc. |
| Address: | 9200 Latty Avenue<br>Hazelwood, MO 63042-2805 |
| Phone: | (314) 324-3023 |
| email: | rod@repunlimited.com |

Signature Page for Consent Decree Regarding North St. Louis County FUSRAP Site

Date: 1/13/2025

Rodney Jarboe
6 Lochinvar Dr.
St. Louis, MO 63131
(314) 324 3023
rod@repunlimited.com

Signature Page for Consent Decree Regarding North St. Louis County FUSRAP Site

Date: 1/13/25

J Jarboe

Jeffrey Jarboe
PO Box 194
Gerald, MO 63037
(314) 791-0168
jeff@creativepolymersinc.com

# Appendix A

Path: U:\GPS\NorthCo\North County ROD Revisions\ESD\Figure 1 Original NC ROD Boundary.mxd




LEGEND:

- ROD Boundary
- General Location of Latty Avenue VPs
- General Location of SLAPS
- Road
- Airfield
- Investigation Areas
- Parcel Boundary
- River/Stream

N W E S

MO-East State Plane
(NAD 83, Feet)

0 1,000 2,000 Feet

North County St. Louis Sites
St. Louis, Missouri

FUSRAP

| DRAWN BY: | | |
|---|---|---|
| Leidos | 0 | 12/1/2021 |

Figure 1. North St. Louis County ROD Boundary

**Appendix B**

**List of Financial Documents Submitted to DOJ by Settling Defendant**

**Jarboe Realty & Investment Co., Inc.**

- Federal Income Tax Returns (IRS Form 1120) for the years ended December 31, 2016 through 2020.
- Unaudited accrual-basis balance sheets and profit and loss statements for the years ended December 31, 2016 through 2022.
- Compiled cash-basis financial statements, including balance sheets, statements of revenue, expenses, and retained earnings, and operating expenses for the years ended December 31, 2016 through 2020.
- TD Ameritrade Collateral Account Statement, December 31, 2021.
- Commerce Bank letter related to the TD Ameritrade collateral securities account, May 8, 2018.
- Summary of annual profits and losses and intercompany loans for 2016-2020.
- Summaries of real estate assets from affiliates for 2016-2021.
- St. Louis County Property Tax Statement for real estate assets, 2021.
- Summary of ownership, January 27, 2022.
- January 6, 2023 letter from John J. Placht, CPA to Mr. Stephen G. Jeffery, Jeffery Law Group, LLC.
- January 9, 2023 letter from Stephen G. Jeffery, Jeffery Law Group, LLC to Mr. John Broderick, U.S. DOJ.
- April 28, 2023 letter from Commerce Bank to TD Ameritrade re: Jarboe Realty & Investments Co. Accounts for Replications Unlimited, LLC and Creative Polymers, Inc. accounts.
- May 4, 2023 letter from Stephen G. Jeffery, Jeffery Law Group, LLC to Mr. John Broderick, U.S. DOJ.
- Powerpoint Slides prepared by Defendants, "DOJ Meeting, May 18th 2023."
- "Owners Overal [sic] Compensation between Companies, 2010-2022," chart prepared by Defendants for settlement meeting, May 18, 2023.
- Jarboe Realty Statement of Cash Flows, 2016-2022.
- June 18, 1979 St. Louis County, Board of Equalization, Property Assessment, Appeal by Enos Dean Jarboe regarding 9200 Latty Avenue.
- September 18, 2017 Commercial Pledge and Security Agreement by Jarboe Realty regarding loan by Commerce Bank to Replications Unlimited.
- July 26, 2017 letter from TD Ameritrade to Commerce Bank concerning the Jarboe account.

**Creative Polymers, Inc.**

- Federal Income Tax Returns (IRS Form 1120) for the years ended December 31, 2016 through 2020.
- Unaudited accrual-basis balance sheets and profit and loss statements for the years ended December 31, 2016 through 2022.

- Summaries of sales to Replication Unlimited for the years ended December 31, 2016 through 2021.
- Certificate of incorporation.
- Summary of ownership, January 27, 2022.
- Creative Polymers, Inc. Statement of Cash Flows, 2016-2022.
- Creative Polymers Flood Expenses 2022.
- June 13, 2023 letter from U.S. Small Business Administration, Disaster Assistance, to Creative Polymers, Inc. regarding SBA Disaster Loan Application.
- April 5, 2022 Promissory Note between Commerce Bank and Creative Polymers, Inc.
- June 15, 2023 letter from John J. Placht, CPA to Stephen G. Jeffrey, Jeffrey Law Group regarding owners' compensation paid to Dave Hunsicker.

**Replications Unlimited**

- Federal Income Tax Returns (IRS Form 1065) for the years ended December 31, 2016 through 2020.
- Unaudited accrual-basis balance sheets and profit and loss statements for the years ended December 31, 2016 through 2022.
- Operating Agreement.
- Certificate of organization.
- Summary of ownership, January 27, 2022.
- Replications Unlimited Flood Expenses, 2022.
- Replications Unlimited Statement of Cash Flows, 2016-2022.
- June 13, 2022 Promissory Note by Commerce Bank to Replications Unlimited.
- February 1, 2023 Promissory Note by Commerce Bank to Replications Unlimited.
- June 5, 2023 letter from U.S. Small Business Administration, Disaster Assistance, to Replications Unlimited LLC regarding SBA Disaster Loan Application.

## Appendix C

## List of Insurance Documents Submitted to DOJ by Settling Defendant

1. December 14, 2023 letter from Stephen G. Jeffery, Jeffrey Law Group, LLC to John Broderick, U.S. DOJ, "Re: Jarboe Entities, Latty Avenue Properties.

2. December 12, 2023 letter from Steven Gissy, MGI Risk Advisors to Stephen G. Jeffrey, Jeffrey Law Group, LLC.

3. January 26, 2024 letter from Rodney LeGrand, Assured Partners of Missouri to John Broderick, U.S. DOJ, "Re: Jarboe Entities, Latty Avenue Properties. Includes Spreadsheet Attachment of Policies, 1993-2016.

4. Great American E&S Insurance Company, policy PL2388645-14 (07/25/2023-07/25/2024).

5. Great American E&S Insurance Company, policy XS3305832-09 (07/25/2023-07/25/24).

6. Great American E&S Insurance Company, policy PL2388645-13 (07/25/2022-07/25/2023).

7. Great American E&S Insurance Company, policy XS3305832-08 (07/25/2022-07/25/23).

8. Great American E&S Insurance Company, policy PL2388645-12 (07/25/2021-07/25/2022).

9. Great American E&S Insurance Company, policy XS3305832-07 (07/25/2021-07/25/22).

10. Verlan Fire Insurance Company, policy M001906-11 (09/16/2011-09/16/2012).

11. Great American E&S Insurance Company, policy PL2388645-00 (08/02/2011-08/02/2012).

12. Accident Fund Insurance Company of America, policy WCV 6064515 (03/26/2011-03/26/2012).

13. Verlan Fire Insurance Company, policy MOO2734-12 (09/20/2012-09/20/2013).

14. Great American E&S Insurance Company, policy PL2388645-02 (07/25/2012-07/25/2013).

15. Verlan Fire Insurance Company, policy MOO1906-13 (09/16/2013-09/16/2014).

16. Great American E&S Insurance Company, policy PL2388645-04 (07/25/2013-07/25/2014).

17. Verlan Fire Insurance Company, policy MOO1906-14 (09/16/2014-09/16/2015).

18. Great American E&S Insurance Company, policy PL2388645-05 (07/25/2014-07/25/2015).

19. Great American E&S Insurance Company, policy XS1944329-00 (01/27/2014-07/25/2014).

20. Great American E&S Insurance Company, policy XS3305832-00 (07/25/2014-07/25/2015).

21. Verlan Fire Insurance Company, policy MOO1906-15 (09/16/2015-09/16/2016).

22. Great American E&S Insurance Company, policy PL2388645-06 (07/25/2015-07/25/2016).

23. Great American E&S Insurance Company, policy XS3305832-01 (07/25/2015-07/25/2016).